# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

MICHAEL LONDRE
3473 Eichstadt Road
Oshkosh, Wisconsin 54901

        Plaintiff,

        v.                                                     Case No.: 17-cv-842

HUBERTY AND ASSOCIATES, S.C.                    **JURY TRIAL DEMANDED**
145 South Marr Street #2
Fond du Lac, Wisconsin 549351

        Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff, Michael Londre, by his counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the court as follows:

1.      This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under the Americans with Disabilities Act ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101, *et. seq.*

2.      The unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin and therefore venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

3.      Plaintiff, Michael Londre, is an Adult male resident of the State of Wisconsin residing in Winnebago County with a post office address of 3473 Eichstadt Road, Oshkosh, Wisconsin 54901.

4. Mr. Londre is legally blind.

5. Mr. Londre's legal blindness, or macular degeneration (hereinafter simply Mr. Londre's "Disability"), is a permanent, physical, genetic health condition that Mr. Londre has had since he was approximately fifteen years old.

6. Despite Mr. Londre's Disability, he has his vision and is not completely blind: his Disability disrupts the center of his vision and, at times, his vision is impaired.

7. Mr. Londre's Disability substantially and negatively affects, among other things, his vision and the normal functioning of his eyes.

8. Mr. Londre can perform all of the tasks, functions, and/or hobbies that other individuals with normal or regular vision or eyesight can perform, except that Mr. Londre cannot drive. Instead of driving himself from place to place, Mr. Londre travels via bike, bus, cab, ride-sharing service (such as Uber or Lyft), or another individual (such as his wife or a friend) drives him to where he needs to go.

9. Defendant, Huberty & Associates, S.C., was, at all material times herein, a Wisconsin corporation with a principal office address of 145 South Marr Street #2, Fond du Lac, Wisconsin 54935.

10. Defendant provides tax, accounting, and wealth management services, among other services, to its clients, and has multiple, physical locations in the eastern-half of Wisconsin, including offices located in Fond du Lac, Ripon, and Oshkosh.

11. In December 2016, Defendant offered Mr. Londre employment in the position of part-time Tax Intern/Tax Preparer.

12. On or about January 15, 2017, Mr. Londre began working at Defendant as a part-time Tax Intern/Tax Preparer.

13.     Eric Gurholt, Shareholder and Defendant's Director of Wealth Management, was the individual at Defendant who primarily communicated with Mr. Londre prior to his employment, and was the individual who hired Mr. Londre into his part-time Tax Intern/Tax Preparer position.

14.     Prior to commencing his employment with Defendant on or about January 15, 2017, Mr. Londre informed Gurholt of his Disability.

15.     During Mr. Londre's employment with Defendant, many of Defendant's employees – and particularly those with whom Mr. Londre interacted with directly – knew or had knowledge of Mr. Londre's Disability.

16.     In his position as a part-time Tax Intern/Tax Preparer, Defendant compensated Mr. Londre with an hourly rate of $15.00 per hour and required him to work a minimum of twenty-four (24) hours per week.

17.     During Mr. Londre's employment with Defendant as a part-time Tax Intern/Tax Preparer, he reported directly to Gurholt and Gary Born, one of Defendant's Shareholders.

18.     During Mr. Londre's employment with Defendant as a part-time Tax Intern/Tax Preparer, Gurholt managed Defendant's Fond du Lac, Wisconsin office, while Born managed Defendant's Ripon, Wisconsin office.

19.     During Mr. Londre's employment with Defendant, Born had knowledge of Mr. Londre's Disability.

20.     During Mr. Londre's employment with Defendant as a part-time Tax Intern/Tax Preparer, his customary or normal work schedule was the following: (1) to work Wednesdays and Fridays at Defendant's Fond du Lac, Wisconsin office; and (2) to work Saturdays at Defendant's Ripon, Wisconsin office.

21.     During Mr. Londre's employment with Defendant as a part-time Tax Intern/Tax Preparer, his job duties and job responsibilities were to perform both tax preparation services (completing individual/personal and business/commercial tax returns with a wide range of difficulty, including completing complex returns) and wealth management services.

22.     During Mr. Londre's employment with Defendant as a part-time Tax Intern/Tax Preparer, he was capable of physically performing all of the job duties and job responsibilities of his position with his Disability.

23.     During Mr. Londre's employment with Defendant as a part-time Tax Intern/Tax Preparer, he actually physically performed all of the job duties and job responsibilities of his position with his Disability.

24.     The duration of Mr. Londre's part-time Tax Intern/Tax Preparer position was to last from January 15, 2017 until at least April 15, 2017, with the understanding that after April 15, 2017, Defendant would hire Mr. Londre into a full-time Staff Accountant position.

25.     During Mr. Londre's employment with Defendant as a part-time Tax Intern/Tax Preparer, he had multiple conversations with Gurholt regarding Defendant hiring Mr. Londre into a full-time Staff Accountant position after his part-time Tax Intern/Tax Preparer ended. For example, on more than one occasion and in more than one conversation, Gurholt told Mr. Londre that after the "tax busy season," which was from approximately January 2017 to April 15, 2017, "we'll bring you on full-time to do the exact same thing," or words to that effect, referring to the duties Mr. Londre was then-currently performing in his part-time Tax Intern/Tax Preparer position.

26.     As a full-time Staff Accountant, Mr. Londre would have earned an annual salary of approximately $60,000, plus benefits and a bonus if he passed his Certified Public Accounting examination.

27.     As a full-time Staff Accountant, Mr. Londre's job duties and job responsibilities would have included the following: preparing and completing individual/personal and business/commercial tax returns; researching tax issues; performing wealth management services; executing general accounting tasks; preparing and reviewing quarterly and annual payroll reports for clients; authorizing and submitting payroll tax payments for clients; completing assignments in a timely manner; performing payroll processing for clients as needed; communicating with clients; and maintaining confidentiality.

28.     As a full-time Staff Accountant, Mr. Londre would have been able to physically perform all of the job duties and job responsibilities of the position with his Disability.

29.     As a full-time Staff Accountant, Mr. Londre would have physically worked in Defendant's Ripon, Wisconsin and Oshkosh, Wisconsin offices.

30.     During Mr. Londre's employment with Defendant and despite Gurholt's communications to Mr. Londre regarding Defendant's desire and intent to hire him into a full-time Staff Accountant position after his part-time Tax Intern/Tax Preparer ended, Gurholt told Mr. Londre that, "Gary's going to make the final decision on hiring you full-time at the end of the busy season," or words to that effect.

31.     During Mr. Londre's employment with Defendant and despite Gurholt's communications to Mr. Londre regarding Defendant's desire and intent to hire him into a full-time Staff Accountant position after his part-time Tax Intern/Tax Preparer ended, Defendant did not hire Mr. Londre into a full-time Staff Accountant position.

32.     When Defendant hired Mr. Londre into his part-time Tax Intern/Tax Preparer position, Gurholt told Mr. Londre that both he (Gurholt) and Born would jointly and equally mentor and train Mr. Londre.

33. From the commencement of Mr. Londre's employment with Defendant on or about January 15, 2017 in his part-time Tax Intern/Tax Preparer position, Born deliberately avoided Mr. Londre, providing him with little, if any, mentoring and training.

34. During Mr. Londre's employment with Defendant, it did not provide him with a formal work performance evaluation or review.

35. During Mr. Londre's employment with Defendant, he received praise from other employees and Shareholders of Defendant, such as from Gurholt and Robin Lutz, Director of Tax Services at Defendant's Fond du Lac, Wisconsin location, regarding his positive work performance and work ethic.

36. During Mr. Londre's employment with Defendant, he did not receive any negative feedback, discipline, or "coachings" (either verbal or written) from Defendant.

37. On or about Wednesday, March 29, 2017, and while at work at Defendant, Mr. Londre asked Jackie Jacak, Defendant's Executive Administrator, about being hired into the full-time Staff Accountant position in April 2017. Jacak responded, "We're waiting to hear from Gary," and, "We haven't heard anything from Gary yet," or words to that effect.

38. On or about Thursday, March 30, 2017, Jacak called Mr. Londre via telephone (hereinafter simply "the March 30, 2017 telephone conversation").

39. During the March 30, 2017 telephone conversation, Jacak told Mr. Londre, "Gary did not offer you the position," referring to the full-time Staff Accountant position, and that, "Saturday in Ripon will be your last day," or words to that effect.

40.     On or about Friday, March 31, 2017, Mr. Londre and his wife were present at Defendant's Fond du Lac, Wisconsin office to gather his personal belongings from his office space. Ann Freund, Shareholder, noticed the presence of Mr. Londre and his wife and asked Mr. Londre, "What are you doing?" and "Where are you going?" Mr. Londre responded, "Gary didn't offer me the job here," referring to the full-time Staff Accountant position. Freund was visibly surprised and wished Mr. Londre luck.

41.     April 1, 2017 was Mr. Londre's last day of actual work at Defendant.

42.     Effective April 1, 2017, Defendant terminated Mr. Londre's employment.

43.     On or about Saturday, April 1, 2017, Born met with Mr. Londre at Defendant's Ripon, Wisconsin office (hereinafter simply "the April 1, 2017 meeting").

44.     During the April 1, 2017 meeting, Born told Mr. Londre that he (Born) was not going to offer Mr. Londre the full-time Staff Accountant position.

45.     During the April 1, 2017 meeting, Born told Mr. Londre that he (Born) was not going to offer Mr. Londre the full-time Staff Accountant position because of his Disability.

46.     During the April 1, 2017 meeting, and when referring to the full-time Staff Accountant position, Born told Mr. Londre, "When I thought about offering you the job, I considered that I drive to different locations and you can't drive, and because you can't drive, I don't think you can do this job," or words to that effect.

47.     During the April 1, 2017 meeting, and when providing Mr. Londre with the reasons why he (Born) did not offer Mr. Londre the full-time Staff Accountant position, Born told Mr. Londre, "I considered that during client interviews you're required to read small print, and I don't think that's something you can do either," or words to that effect.

48. During the April 1, 2017 meeting, and when referring to the full-time Staff Accountant position, Born told Mr. Londre, "Because of these reasons is why I didn't offer you the position," or words to that effect, referring to the statements Born made to Mr. Londre as stated in Paragraphs 46 and 47, above.

49. During the April 1, 2017 meeting, Born told Mr. Londre, "If you find a job in Appleton or a bigger city, you'll have better transportation," or words to that effect.

50. The statements Born made to Mr. Londre during the April 1, 2017 meeting were in direct reference to Mr. Londre's Disability and Born's mistaken and discriminatory belief that Mr. Londre could not perform the duties and responsibilities of the full-time Staff Accountant position because of his Disability.

51. Defendant did not hire Mr. Londre into the full-time Staff Accountant position because of his Disability.

52. Subsequent to Defendant's termination of Mr. Londre on April 1, 2017, Defendant advertised for the full-time Staff Accountant position, which, upon information and belief, remains vacant.

53. Subsequent to his termination from Defendant, Mr. Londre filed complaints with the Equal Employment Opportunity Commission – Milwaukee Area Office ("EEOC"), designated as EEOC Charge No. 443-2017-00747, alleging disability discrimination as a result of Defendant's unlawful termination of him, and EEOC Charge No. 443-2017-00862, alleging disability discrimination as a result of Defendant's unlawful failure to hire him.

54. The EEOC issued Mr. Londre a Notice of Right to Sue on Charge No. 443-2017-00747, dated April 25, 2017, and on Charge No. 443-2017-00862, dated May 12, 2017.

55. Mr. Londre exhausted all administrative remedies and filing requirements prior to bringing this action.

## CAUSE OF ACTION – DISABILITY DISCRIMINATION

56. Mr. Londre re-alleges and incorporates paragraphs 1-55 of this Complaint by reference.

57. Defendant intentionally discriminated against Mr. Londre by terminating his employment because of his disability in reckless disregard for his federally protected rights under the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §§ 12101, *et. seq*.

58. Defendant intentionally discriminated against Mr. Londre by failing to hire him because of his disability in reckless disregard for his federally protected rights under the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §§ 12101, *et. seq*.

59. As a result of Defendant's intentional discrimination, Mr. Londre suffered damages in the form of lost wages and benefits, emotional distress, pain and suffering, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 16th day of June, 2017.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff


s/ *Scott S. Luzi*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
Kelly L. Temeyer, State Bar No. 1066294

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
ktemeyer@walcheskeluzi.com